# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARCO MARTINEZ,

        Plaintiff,

vs.

SUN LIFE ASSURANCE COMPANY OF CANADA,

        Defendants.

CASE NO.

EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(H)(1)

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Marco Martinez, by and through his undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.     This is an action brought pursuant to the Uniformed Services Employment Rights and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 *et seq.,* and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by Plaintiff, on behalf of himself and a Class of persons who are servicemembers and/or who are veterans who are now serving or served in the uniformed services and are participants in an ERISA-covered disability plan ("LTD Plan" or "Plan") by which their benefits are provided pursuant to a group long-term disability ("LTD") insurance policy offered by Sun Life Assurance Company of Canada ("the Sun Life LTD Policy" or "the Policy").

2.     Defendant Sun Life Assurance Company of Canada ("Sun Life") has interpreted the Sun Life LTD Policy to reduce the benefits required to be paid under the Policy by the amount of benefits that veterans receive from the United States government through the

Department of Veterans Affairs ("the VA") as a result of the injuries sustained during their military service ("Veterans Disability Benefits").

3.      As a result of Sun Life interpreting its policy in a manner that provides a reduced amount of LTD benefits based on whether an employee/participant has performed service in the uniformed service and as a result of such service receives disability benefits, Sun Life has adopted and applied a discriminatory policy of denying a benefit of employment to Plaintiff and other current or former servicemembers on the prohibited basis of membership or performance of service in a uniformed service in violation of USERRA.

4.      No written document discloses, as required under ERISA, that payment under the Sun Life LTD Policy will be offset by Veterans Disability Benefits.  Nor can the written terms of the Policy be construed, under the rules of interpretation, to provide for an offset of Veterans Disability Benefits.  Nonetheless, Sun Life has interpreted certain undefined terms in such a way to reduce the amount that it pays to veterans receiving Veterans Benefits, and, in the case of Plaintiff, interpreted the Policy in such a way to result in him currently receiving no disability payment from Sun Life and to demand immediate "repayment" of thousands of dollars previously paid and now allegedly "overpaid."  By providing the description of income eligible for offset in the Certificate issued along with the Policy and by failing to properly disclose in the Certificate that Veterans Disability Benefits may be an offset against benefits paid under the Policy, Sun Life is liable as a co-fiduciary for the fiduciary breaches of the Plan Administrators or a knowing participant in the breaches of the Plan Administrators.

5.      This action seeks (a) a determination that Sun Life violated USERRA by treating Veterans Disability Benefits as an offset against benefits to be paid under the Policy, and an order enjoining Sun Life from such practice in the future and requiring Sun Life to compensate

Plaintiff and other veteran-participants for their losses of benefits and pay liquidated damages; (b) a determination that Plaintiff and the Class are entitled to receive benefits under the terms of the Sun Life LTD Policy without an offset for the amount received in Veterans Disability Benefits or alternatively that Sun Life failed to properly disclose the offset; (c) an order reforming the terms of the Policy to require payment without such an offset; (d) an order that Sun Life be required to disgorge any profits earned as a result of its wrongful offset of such benefits; and (e) and order enjoining Sun Life from collecting alleged overpayments that it is not entitled to collect.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, ERISA § 502(a) and (e), 29 U.S.C. § 1132(a) and (e), and USERRA § 4323(b)(3), 38 U.S.C. § 4323(b)(3).  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343(a)(4) because Plaintiff seeks to secure relief under an Act of Congress that protects civil rights.

### Personal Jurisdiction

7.      This Court has personal jurisdiction over Defendant because Defendant transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

### Venue.

8.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a)     Defendant may be found in this District because it transacts business in

and/or has significant contacts with this District; and/or

(b)     At least some of the alleged breaches took place in this District because,

upon information and belief, there are class members who have been or will be

denied the benefits sought through this action and should have received or should

receive those benefits in this District.

9.      Venue is proper in this district pursuant to USERRA § 4323(c)(2), 38 U.S.C.

§ 4323(c)(2), because Defendant Sun Life, which qualifies as a private employer of the person

who has brought this action within the meaning of ERISA § 4303(4)(A)(i), also "maintains a

place of business"—in fact, its Unites States headquarters—in this District.

## PARTIES

10.     Plaintiff Marco Martinez is a former employee of Athens Group, Inc. ("Athens

Group").  As a result of his employment with Athens Group, Plaintiff is and has been a

participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) in the Athens Group Long

Term Disability Plan ("Athens Group LTD Plan.").  Prior to his employment at Athens Group,

Plaintiff served in the United States Army during the Persian Gulf War and was honorably

discharged at the rank of Specialist in 1992 after serving for five years.

11.     Defendant Sun Life Assurance Company of Canada ("Sun Life") is an insurance

company and is a subsidiary of Sun Life Financial Services, Inc.  Sun Life markets and sells,

among other products, group disability insurance policies to companies in all fifty states.  Sun

Life's United States headquarters office is located in Wellesley Hills, Massachusetts.  Upon

information and belief, Sun Life markets and sells group disability policies containing

substantially similar provisions describing the types of income that may be offset against benefits

under the policies.  For those group disability policies, including the LTD Policy issued to fund

or insure the Athens Group LTD Plan, Sun Life is the claims administrator of the LTD Plans and

payor of benefits under the Plans.  Sun Life is the entity under those Plans that makes the

decision about the persons eligible for benefits and the decisions about the benefits to be paid

under the policy that it issues.  Sun Life also drafts and provides documents to participants under

those Plans that describe participants' eligibility for benefits.  As a result, Sun Life is a fiduciary

within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

12.     Defendant Sun Life is the entity to which the employers that sponsor those Plans

have delegated the employment-related responsibility of rendering determinations on eligibility

for benefits under those Plans.  As a result, Sun Life is an employer of the veteran-participants in

those Plans, including Plaintiff, within the meaning of USERRA § 4303(4)(A), 38 U.S.C.

§ 4303(4)(A).

## RELEVANT NON-PARTIES

13.     Athens Group, Inc. ("Athens Group") is a consulting firm specializing in the

operation of complex oil rigs and drilling systems.  The LTD Policy issued to Athens Group by

Sun Life identifies Athens Group as the "Policyholder."  Athens Group is the Sponsor of the

Athens Group LTD Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B),

because it is the employer that established the Athens Group LTD Plan by purchasing the Sun

Life LTD Policy and committing to provide long-term disability benefits ("LTD Benefits") to its

employees under the terms of the Policy.  Athens Group is also the Plan Administrator of the

Athens Group LTD Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A),

because it is the Sponsor of the Plan and no instrument under which the Plan is operated

designates an Administrator of the Plan.

5

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of persons ("the Class") defined as follows:

(A)     All participants in an ERISA-covered long-term disability plan that is insured by Sun Life Assurance Company of Canada pursuant to an Applicable Policy who either were discharged from service in the United States Armed Forces under conditions other than dishonorable or are servicemembers (the "Participant Class Members"), and

(B)     the beneficiaries of such participants (the "Beneficiary Class Members").

15.     An "Applicable Policy" is a long-term disability policy, contract, certificate, or agreement (collectively an "LTD Policy") offered by Sun Life Assurance Company of Canada, which LTD Policy (a) provides that disability benefits may be offset by income by an amount for which the covered person is eligible under (i) Workers' Compensation Law, (ii) Occupational Disease Law, (iii) Unemployment Compensation Law, (iv) any Compulsory Benefit Act or Law, (v) any other act or law of like intent, or (vi) the United States Social Security Act, or any similar plan or act; and (b) does not specifically identify veterans benefits as an offset under the Policy.

16.     Excluded from the Class are persons who had decision-making or administrative authority relating to the establishment, administration, modification, funding, or interpretation of any plan funded or insured by a group long-term disability policy issued by Sun Life, including the Athens Group LTD Plan, or persons who had decision-making or administrative authority relating to the establishment, administration, modification, funding, or interpretation of any other employee welfare benefit plan to which a Sun Life policy, contract, certificate, or agreement is offered.

**Numerosity and Impracticability of Joinder**

17.     Joinder of all members of the Class is impracticable based on the size and geographic diversity of the Class.  According to marketing materials available on the website of Sun Life's parent company, Defendant Sun Life covers "more than 12 million employees in the United States."  Sun Life Financial, Group Disability Benefits Brochure, *available at http://www.sunlife.com/us/For+businesses/Disability+insurance/Longterm+Disability?vgnLocale=en_CAAs*.  Further, the same website of Sun Life's parent discloses that "[g]roup life and disability insurance policies are underwritten by Sun Life Assurance Company of Canada (Wellesley Hills, MA) in all states, except New York," in which state those polices "are underwritten by Sun Life and Health Insurance Company (U.S.) (Windsor, CT)."  Sunlife.com, Disability Insurance, *available at http://www.sunlife.com/us/For+businesses /Disability+insurance?vgnLocale=en_CA*.  Because approximately 13% of the overall United States population consists of veterans, the number of veteran-participants of the Class is reasonably estimated to consist of thousands of members among the 12 million Sun Life-insured employees, located throughout the United States.

**Commonality**

18.     Plaintiff's claims raise common questions that will have common answers for each member of the Class with respect to liability.  The central issues of liability concern whether offseting amounts to be paid pursuant to the Sun Life LTD Policy by the amount of Veterans Disability Benefits is permissible under USERRA or the terms of the Sun Life LTD Policy and whether those offsets were adequately disclosed.  The USERRA claim will involve resolution of whether Sun Life's interpretation of its Policy violates USERRA.  The central question for the ERISA claims is whether Veterans Disability Benefits may be used to offset

LTD Benefits under Sun Life's LTD Policies that provide coverage for all members of the Class. This question will be resolved by interpreting the terms of the written policy and/or other disclosures issued by Sun Life.  Other central questions common to the Class include, but are not limited to, whether Sun Life fails to disclose that Veterans Disability Benefits may be offset against LTD Benefits under uniform terms in Sun Life LTD Policies and in uniform disclosures drafted and provided by Sun Life, and whether Sun Life may withhold and seek to recover LTD Benefits that it claims were "overpaid" in the amount of Veterans Disability Benefits.

19.     The issues regarding relief are also common to the members of the Class.  The requested relief consists primarily of a declaration that the members of the Class are entitled to LTD Benefits under the Sun Life LTD Policy without an offset of their Veterans Disability Benefits, an order requiring Sun Life to provide benefits consistent with that determination, disgorgement of any profits earned on any wrongfully withheld benefits, and/or a declaration that Sun Life may not seek equitable restitution of allegedly overpaid LTD Benefits from members of the Class.  As to Sun Life's co-fiduciary liability for the fiduciary breaches of the Plan Administrators of the plans funded or insured pursuant to a Sun Life LTD Policy, the issue of relief will be whether the terms of the instrument under which the plans are established and maintained should be reformed due to the description of income that may be offset against LTD Benefits in the Certificate and/or the "summary plan description," and if not, what the appropriate remedy is. On the issues of whether Sun Life must compensate certain members of the Class for their losses of LTD Benefits and pay liquidated damages, these amounts can be determined on a formulaic approach that takes into account the Class member's amount of Veterans Disability Benefits and his or her pre-offset amount of LTD Benefits.

**Typicality**

20.     Plaintiff's USERRA, ERISA and Veterans Act claims are typical of the claims of the other members of the Class because his claims arise from the same event, practice and/or course of conduct as other members of the Class. On behalf of the Participant members of the Class, Plaintiff challenges the legality of Sun Life's policy under USERRA of reducing LTD Benefits under the Sun Life LTD Policies in the amount of Veterans Disability Benefits on behalf of the Class, Plaintiff challenges Sun Life's interpretation of a written policy document, which uniformly defines the types of income that may be used to offset benefits under the Plan, as well as Defendant's practice of seeking to offset and recover LTD Benefits under the Sun Life LTD Policies in the amount of Veterans Disability Benefits.  On behalf of the Class, Plaintiff also challenges the disclosures drafted and provided by Sun Life as to whether Veterans Disability Benefits may be offset against LTD Benefits under the terms of uniform Sun Life LTD Policies.

**Adequacy**

21.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.

22.      Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Class.

23.     Defendant has no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

24.     Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and with extensive experience and expertise in ERISA and USERRA class action litigation.

**Rule 23(b)(1)(B)**

25.     The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied as to the Class because the primary issues involve questions concerning whether Veterans Disability Benefits may be used to offset amounts to be paid under USERRA or the terms of the Sun Life LTD Policy and whether Sun Life adequately disclosed that Veterans Disability Benefits may be used to offset LTD Benefits under uniform policy terms.

26.     Administration of an ERISA-covered plan requires that all similarly situated participants be treated consistently.  As such, the Sun Life LTD Policy must be interpreted consistently for all eligible participants in any plan that is funded or insured by the Sun Life LTD Policy.  The same or substantially similar terms in the Sun Life LTD Policy must be interpreted consistently for all covered participants regardless of whether they are in the same plan.  Similarly, participants must be provided uniform disclosures of the conditions and circumstances that may lead to a reduction of their benefits, including having their benefits reduced in the amount of Veterans Disability Benefits.  As a result, resolution of whether an offset of Veterans Disability Benefits is permitted under the Sun Life LTD Policy or under USERRA in an action by a participant in one such plan would be dispositive, as a practical matter, of the interests of other participants in the same plan as well as participants in other plans who are subject to the same or essentially similar policy terms.  Similarly, resolution of whether the disclosures are adequate as to the conditions and circumstances that may lead to a reduction of participants' benefits, including having their benefits reduced in the amount of Veterans Disability Benefits, would be dispositive of the adequacy of the same disclosures issued to other participants.

**Rule 23(b)(1)(A)**

27.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are also satisfied. Both

Defendant Sun Life and the Plan Administrators have a legal obligation to interpret and apply policy terms governing whether LTD Benefits may be offset by Veterans Disability Benefits consistently for all similarly situated participants who are eligible for benefits under the Policy. Similarly, inconsistent adjudications as to the legality under USERRA of Sun Life's policy of reducing LTD Benefits under the Sun Life LTD Policies by the amount of Veterans Disability Benefits create the risk of establishing incompatible standards of conduct for Sun Life and the Plan Administrators. Additionally, Sun Life must provide consistent disclosures of the conditions and circumstances that may lead to a reduction of participants' benefits, including having their benefits reduced in the amount of Veterans Disability Benefits. As the primary issues in this case involve the interpretation of the terms of the Sun Life LTD Policy and the adequacy of disclosures provided to participants, conflicting interpretations of the same Policy and ERISA-mandated disclosures create the risk of establishing incompatible standards of conduct for Defendant Sun Life as well as other fiduciaries of those plans.

**Rule 23(b)(2)**

28.     The requirements of Fed. R. Civ. P. 23(b)(2) are met in this action as to the Class. Upon information and belief, Sun Life issues the same or substantially similar policies that cover all members of the Class. As the fiduciary interpreting the terms of the Sun Life LTD Policy, Sun Life is required to interpret the same or substantially similar terms in the Policy consistently for all covered participants regardless of whether they are in the same plan. As such, and unless Sun Life has acted arbitrarily in its interpretation of its own Policy terms, it has acted or refused to act on grounds that apply generally to the Class. In doing so, Sun Life is alleged to have adopted an interpretation of its policy that violates USERRA § 4311 by denying participants a benefit of employment on the basis of membership or performance of service in a uniformed

service.  Further, upon information and belief, Sun Life prepares and makes the same or

substantially similar disclosures to participants and their beneficiaries of the types of income that

may be offset against benefits awarded under the Policy.  As such, Sun Life has acted or refused

to act on grounds that apply generally to the Class.

29.     The primary relief sought on behalf of the Class is a declaration of their right to

receive LTD Benefits without an offset for their Veterans Disability Benefits, and/or a

declaration that Sun Life cannot seek recoupment of allegedly overpaid benefits from the Class.

As such, final declaratory and injunctive relief is appropriate with respect to the Class as a

whole.  The monetary relief that Plaintiff seeks on behalf of the Class flows from and/or is

incidental to the declaratory and injunctive relief sought.

**Rule 23(b)(3)**

30.     The requirements of Fed. R. Civ. P. 23(b)(3) are met in this action as to the Class.

The following questions of law and/or fact are not only uniform, but will predominate over any

individual questions (a) whether Defendant's policy of reducing LTD Benefits in the amount of

Veterans Disability Benefits violates USERRA § 4311, (b) whether Veterans Disability Benefits

are eligible to be offset against LTD Benefits according to policy terms that refer only to

Workers' Compensation Law, Occupational Disease Law, Unemployment Compensation Law,

Compulsory Benefit Act or Law, or any other act or law of like intent, or the United States Social

Security Act or any similar plan or act and (c) whether Sun Life's uniform disclosures to all

members of the Class adequately disclose that Veterans Disability Benefits may be offset against

LTD Benefits/.

31.     The requirements of Fed. R. Civ. P. 23(b)(3) are also met because a class action is

superior to other available methods for the fair and efficient adjudication of this litigation.

32.     This case involves a determination about the interpretation of the terms of the Sun Life LTD Policy, the adequacy of disclosures to veterans whose benefits are insured under the Policy, and the legality of Defendant's policy under USERRA of reducing LTD Benefits in the amount of Veterans Disability Benefits.  The Sun Life LTD Policy must be applied consistently to every participant whose LTD Benefits are governed by the Policy, the disclosures as to the types of income that may be offset are the same, and Sun Life applies the same policy of offsetting Veterans Disability Benefits against LTD Benefits with respect to all participants who are eligible to receive Veterans Disability Benefits.  As such, the individual members of the Class do not have an interest in prosecuting lawsuits separately.

33.     Upon information and belief, there are no other pending lawsuits in which members of the Class have raised similar allegations, or are defending similar allegations, involving the Sun Life LTD Policy.

34.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, Sun Life is not only located in but maintains its U.S. headquarters in this District, and at least a portion of the Class resides in this District.

35.     There are no difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

### Background of Plaintiff

36.     Marco Martinez served in the United States Army beginning on June 16, 1987, and was involved in combat operations in the Persian Gulf War.  He was honorably discharged on July 2, 1992.

37.     Mr. Martinez was employed by Athens Group from September 1, 2010 until November 27, 2012.  Between September 2010 and November 2012, he held the position of

Senior System Administrator in Athens Group.  In April 2009, Mr. Martinez was officially

diagnosed with, among other conditions, multiple sclerosis.  In August 2012, his medical

conditions had deteriorated to such an extent that he had to be hospitalized for three days.

38.    At some time prior to August 2012, Mr. Martinez became a participant in the

Athens Group LTD Plan.

**The Athens Group LTD Plan**

39.    The Athens Group LTD Plan is an "employee welfare benefit plan" within the

meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).  The Athens Group LTD Plan is offered to

eligible employees of Athens Group, Inc.

40.    In response to Plaintiff's June 11, 2015 document request to the Plan

Administrator of the Athens Group LTD Plan under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4),

Debbie S. Leigh, who was Manager of Billing and Revenue Accounting at Athens Group

Holdings, LLC, provided Plaintiff by letter dated June 18, 2015 a copy of the Sun Life LTD

Policy and a copy of the Certificate issued by Sun Life with the Policy ("the Certificate of

Coverage" or "the Certificate").  According to Ms. Leigh, the Sun Life LTD Policy and the

Certificate are the "full plan document" and "summary plan description" of the Athens Group

LTD Plan, respectively.  According to Ms. Leigh, Athens Group "do[es] not have an annual

report, trust agreement, or any other documents related to the policy."

41.    The Certificate states that "the Group Policy [issued by Sun Life] is the document

which forms Sun Life's contract to provide benefits."  Upon information and belief, the terms of

the Sun Life LTD Policy issued to Athens Group are essentially the same or substantially similar

to the terms of other disability policies that Sun Life markets, sells, and provides to employers

and employees nationwide.

## Relevant Terms of the Sun Life LTD Policy

### *Employees Covered Under the Policy*

42.　　Section III of the Sun Life LTD Policy states that "the class(es) eligible for insurance" under the terms of the Policy "are shown in Section I, Schedule of Benefits."  Section I of the Policy identifies "[a]ll Full-Time United States Employees working in the United States scheduled to work at least 30 hours per week" as the Eligible Classes under the Policy. "Employee" is defined by Section II of the Policy as "a person who is employed by the Employer within the United States, scheduled to work at least the number of hours shown in Section I, Schedule of Benefits, and paid regular earnings."  Under these provisions, all full-time United States Employees who work at least 30 hours per week and are paid regular earnings are eligible to receive benefits under the Policy.

### *Persons Qualified To Receive Benefits Under the Policy*

43.　　Section IV of the Sun Life LTD Policy provides that "[i]f Sun Life receives Notice and Proof of Claim that an Employee is Totally or Partially Disabled, a Net Monthly Benefit will be payable, subject to the Limitations and Exclusions."  As such, persons who are "Totally" or "Partially Disabled" are qualified to receive benefits under the Policy.

44.　　"Partial Disability" and "Partially Disabled" are defined in Section II of the Policy:

> **Partial Disability or Partially Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation and the Employee has Disability Earnings of less than 80% of his Indexed Total Monthly Earnings.  After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Partially Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience and the Employee has Disability Earnings of less than 80% of his Indexed Total Monthly Earnings.

15

45.     "Total Disability" and "Totally Disabled" are defined in Section II of the Policy:

**Total Disability or Totally Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.  After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.

### *Benefits Under the Policy*

46.     The Sun Life LTD Policy provides LTD Benefits in the amount of 60% of a participant's earnings prior to his or her disability.  Under the "Schedule of Benefits" set forth in Section I of the Policy, the "Benefit Percentage" is 60% of a covered employee's "Total Monthly Earnings" up to the "Maximum Monthly Benefit" of $9,500 per month.  The Schedule of Benefits also provides for a "Minimum Monthly Benefit" equal to "$100 or 10% of the Covered Person's Gross Monthly Benefit, whichever is greater."

47.     Section II of the Policy defines "Total Monthly Earnings" as "the Employee's basic monthly earnings as reported by the Employer immediately prior to the first date Total or Partial Disability begins."  "Gross Monthly Benefit" is defined in the same section of the Policy as "the Employee's Monthly Benefit before any reduction of Other Income Benefits as described in Section IV, Long Term Disability Benefits and before any reduction of Disability Earnings."

48.     Section IV of the Policy provides that, "[i]f Sun Life receives Notice and Proof of Claim that an Employee is Totally or Partially Disabled, a Net Monthly Benefit will be **payable**" and that the Net Monthly Benefit will "include reductions described as **Other Income Benefits**" and will "not be less than the Minimum Monthly Benefit specified in the Schedule of Benefits." (Emphases added).

16

49.     According to Section IV of the Policy, if the participant is Totally Disabled, his or her monthly LTD Benefits will be determined by the following:

1.      Take the lesser of:
    a.      the Employee's Total Monthly Earnings multiplied by the Benefit Percentage (shown in Section I, Schedule of Benefits); or
    b.      the Maximum Monthly Benefit (shown in Section I, Schedule of Benefits); then
2.      Subtract **Other Income Benefits** from the amount determined in Step 1.

(Emphasis added).

50.     Section VII of the Policy, in a paragraph entitled "Time of Payment of Claims," provides that benefits under the Policy "will be paid not less frequently than monthly."

### _Offsets of Other Income Under the Terms of the Policy_

51.     Section IV of the Policy describes a covered person's "Other Income Benefits" that may be offset against his or her LTD Benefits awarded under the Policy, in the following provision ("the Other Income Benefits Provision"):

> Other Income Benefits are those benefits provided or available to the Employee while a Long Term Disability Benefit is payable.  These Other Income Benefits, other than retirement benefits, must be provided as a result of the same Total or Partial Disability payable under this Policy.  Other Income Benefits include:

1.      The amount the Employee is eligible under the:
    a.      Workers' Compensation Law; or
    b.      Occupational Disease Law; or
    c.      Unemployment Compensation Law; or
    d.      Compulsory Benefit Act or Law; or
    e.      an automobile no-fault insurance plan; or
    f.      any other act or law of like intent.

2.      The Railroad Retirement Act (including any dependent benefits).

3.      Any labor management trustee, union or employee benefit plans that are funded in whole or in part by the Employer.

4.      Any disability income benefits the Employee is eligible for under:
    a.      any other group insurance plan of the Employer;

   b.     any governmental retirement system as a result of the Employee's
          job with his Employer.

5.     The benefits the Employee receives under his Employer's Retirement Plan
       as follows:
       a.     any disability benefits;
       b.     the Employer-paid portion of any retirement benefits.
       (Disability benefits that reduce the Employee's accrued retirement benefit
       will be treated as a retirement benefit.  Retirement benefits do not include
       any amount rolled over or transferred to any other retirement plan as
       defined in Section 402 of the Internal Revenue Code.)

6.     The disability or retirement benefits under the United States Social
       Security Act, or any similar plan or act, as follows:
       a.     Disability benefits the Employee is eligible to receive.
       b.     Disability benefits the Employee's spouse, child or children are
              eligible to receive because of the Employee's Total or Partial
              Disability unless the dependent benefits are paid directly to the
              divorced spouse or to the children in custody of the divorced
              spouse.
       c.     Retirement benefits received by the Employee.
       d.     Retirement benefits the Employee's spouse, child or children
              receive because of the Employee's receipt of retirement benefits
              unless the dependent benefits are paid directly to the divorced
              spouse or to the children in custody of the divorced spouse.

              If an Employee's Total or Partial Disability begins after Social
              Security Normal Retirement Age, Social Security Retirement
              Benefits will not be offset if, prior to his Total or Partial Disability,
              he was already receiving Social Security Retirement Benefits.

7.     The amount the Employee receives from any accumulated sick leave.

8.     Any salary continuation paid to the Employee by his Employer which
       causes the Net Monthly Benefit, plus Other Income Benefits and any
       salary continuation to exceed 100% of the Employee's Total Monthly
       Earnings.  The amount in excess of 100% of the Employee's Total
       Monthly Earnings will be used to reduce the Net Monthly Benefit.

9.     Any amount due to income replacement or lost wages the Employee
       receives by compromise, settlement or other method as a result of a claim
       for any Other Income Benefits.

10.    Any amount the Employee receives from a voluntary separation of
       employment agreement from the Employer including severance pay or any
       other income in settlement of an employment contract.

Other Income Benefits will include any amount described above which have been available to the Employee had he applied for that benefit.

52.     Section IV of the Policy also provides that the monthly LTD Benefits will not be reduced "due to cost of living increases an Employee receives from any of the sources described as Other Income Benefits."

### *Certificate of Coverage*

53.     Section VI of the Policy states that "Sun Life will provide a Certificate to the Policyholder for delivery to each Employee."  Section II of the Policy defines "Certificate" as "a written booklet prepared by Sun Life" that contains a summary of the following:

1.     the insurance benefits an Employee is entitled to;
2.     to whom the benefits are payable; and
3.     any limitations, exclusions or requirements that may apply.

54.     Section VI of the Policy provides that "[i]f the terms of a Certificate and this Policy differ, this Policy will govern."  The "Certificate" and the "Policy" are two separate documents

### *Claim Provisions*

55.     Section VII of the Policy designates Sun Life as the entity that must receive Notice and Proof of Claim prior to any payment under this Policy and Sun Life is the entity that decides claims for benefits.  Similarly, the "Claim Provisions" of the Certificate provides that Sun Life decides whether and when to pay benefits under the Policy and therefore under the Plans for which its Policies provide coverage.  The "Claim Provision" Section of the Certificate provides that Sun Life is the entity which decides any claims under the Policy and therefore the Plans for which its Policies provide coverage also decides any review or appeals the denials of such claims.  Similarly, the "Review Procedure" subsection of Section VII of the Policy provides that "[i]f all or any part of a claim is denied, the claimant may request in writing a review of the

denial within 180 days after receiving notice of denial" and that "Sun Life will review the claim

on receipt of the written request for review, and will notify the claimant of Sun Life's decision

within a reasonable time . . . ."  As such, under the terms of the Policy and also the Plans through

which Sun Life's policies provide coverage, Sun Life is the entity to which the employers of the

servicemembers/veterans have delegated the performance of employment-related responsibilities

with respect to deciding benefits-related issues under the LTD policies.

### *No Discretionary Clause*

56.     The Sun Life LTD Policy contains no discretionary clause or language that

confers discretionary authority on Sun Life to interpret the provisions and terms of the Policy or

determine the amount of benefits payable under the Policy.

## Sun Life Awards Plaintiff Long-Term Disability Benefits Under the Policy

57.     Plaintiff submitted a claim in November 2012 for LTD Benefits under the Athens

Group LTD Plan, for which funding and benefits are provided through a Sun Life LTD Policy.

58.     By letter dated November 7, 2012, Defendant Sun Life stated that it had been

notified of Plaintiff's claim for LTD Benefits.  The letter asked Plaintiff to submit, among other

things, his "military discharge papers {Form DD-214} along with list of dates and places you

were stationed" and, if he was "eligible for any VA benefits as a result of this claim" (*i.e.,* his

claim for LTD Benefits), "a complete copy of the award letter documenting effective date, gross

monthly benefit and a break down/percentage of each condition awarded."  The November 7,

2012 letter also stated that the monthly amount of LTD Benefits "may be reduced by income you

receive from other sources," which Defendant identified to be "Primary/Family Social Security

Disability and Retirement, Workers' Compensation, state disability, employer sick leave or

salary continuation programs."  The letter also suggested that Plaintiff "refer to the Other Income

provision of the Group Policy and the employee booklet for additional information."  Nothing in

the November 7, 2012 letter mentioned any form of benefits from the Department of Veterans

Affairs ("the VA").  Upon information and belief, the November 7, 2012 letter was substantially

similar to letters sent to and received by other members of the Class.

59.     According to notes produced by Defendant Sun Life as part of Plaintiff's claim

record, Sun Life received on November 9, 2012 Plaintiff's Form DD-214, which documents the

honorable discharge of Plaintiff from active military duty in 1992.

60.     By letter dated December 11, 2012, Defendant Sun Life informed Plaintiff that it

had determined Plaintiff "Totally Disabled" under the Policy and approved payment of LTD

Benefits "due to your disability which commenced on August 23, 2012."  The December 11,

2012 letter stated that Plaintiff's LTD Benefits "beg[a]n to accrue effective November 28, 2012.

61.     The December 11, 2012 letter identified "Social Security Disability, Worker's

Compensation, state disability, employer sick leave, salary continuation programs, certain

pension benefits and/or income provided in settlement of an employment contract, etc." as other

sources of income that might be eligible to offset benefits under the Sun Life LTD Policy.  The

letter also suggested that Plaintiff "refer to the Other Income provision of the Group Policy and

the employee booklet for additional information."  Nothing in the December 11, 2012 letter

mentioned any form of benefits from the VA.  Upon information and belief, the December 11,

2012 letter was substantially similar to letters sent to and received by other members of the

Class.

62.     As a result of its determination reflected in the December 11, 2012 letter,

Defendant Sun Life awarded Plaintiff a net monthly benefit of $4,650.00, which Defendant Sun

Life arrived at by calculating sixty percent of Plaintiff's pre-disability salary from Athens Group.

63.     By letter dated March 8, 2013, Social Security Administration informed Plaintiff that he became entitled to monthly Social Security Disability Insurance ("SSDI") benefits beginning February 2013.

64.     By letter dated March 25, 2013, Defendant Sun Life informed Plaintiff that it would begin deducting from his LTD Benefit award the amount that he was awarded in SSDI benefits.  The letter explained that Defendant Sun Life reduced Plaintiff's LTD Benefits by $2,150.00 as an offset of his SSDI benefits.  As a result of the offset, Plaintiff's net monthly LTD Benefit became $2500.00 effective February 1, 2013.

65.     Defendant's March 25, 2013 letter also stated that, as a result of the SSDI benefit offset, Defendant Sun Life had overpaid Plaintiff's LTD Benefits for the months of February and March 2013.  The letter requested that Plaintiff refund Defendant Sun Life the overpayment amount of $3,598.01 within thirty days of March 25, 2013, and informed Plaintiff that his LTD Benefits had been suspended effective March 31, 2013 pending receipt of the overpayment reimbursement.

66.     Upon receipt of Defendant's March 25, 2013 letter, Plaintiff sent Defendant Sun Life a check in the amount of $3,598.01.  By letter dated April 10, 2013, Defendant Sun Life acknowledged receipt of Plaintiff's check, and informed Plaintiff that his monthly LTD Benefits would continue in the amount of $2500.00.

67.     By letter dated October 17, 2014, Defendant Sun Life informed Plaintiff of its decision that "you are unable to perform with reasonable continuity the Material and Substantial Duties of any Gainful Occupation" and that Plaintiff met the changed definition of Total Disability effective November 27, 2014, at the expiration of the initial twenty-four months of his eligibility for LTD Benefits under the Athens Group LTD Plan.

68.     No written communication from Sun Life or the Athens Group LTD Plan to Plaintiff prior to March 2015 ever identified income from any form of payment of benefits to veterans as income eligible for offset under the Sun Life LTD Policy.

**The Department of Veterans Affairs Approves Plaintiff for Veterans Disability Benefits**

69.     Plaintiff submitted a claim for service-connected disability compensation ("Veterans Disability Benefits") to the VA about November 2013.

70.     By letter dated January 6, 2015 ("the VA Letter"), the VA informed Plaintiff that his claim for Veterans Disability Benefits was granted.  The VA attached to the letter a Rating Decision dated January 2, 2015 ("the Rating Decision").

71.     The VA Letter explained that the VA had determined that Plaintiff is (a) 100% disabled due to service-connected multiple sclerosis with loss of use of both feet; (b) 40% disabled due to right upper extremity weakness associated with service-connected multiple sclerosis; (c) 30% disabled due to service-connected irritable bowel syndrome; and (d) 20% disabled due to left upper extremity weakness and voiding dysfunction, both associated with service-connected multiple sclerosis.  As a result, the VA concluded that Plaintiff's combined rating was 100% disabled as a result of conditions related to military service.

72.     The VA Letter explained that Plaintiff is entitled to receive special monthly compensation (due to loss of use of his feet) as well as specially adapted housing and automobile and other conveyance or adaptive equipment.

73.     The VA Letter explained that Plaintiff was entitled to benefits awarded to him effective August 1, 2013 in the amount of $3,942.00, with benefits modified as a result of cost of living adjustments to the amounts of $4,001.65 effective as of December 1, 2013, of $4,000.86 effective as of January 1, 2014, and of $4,069.30 effective as of December 1, 2014.  The VA

Letter also explained that this payment "include[d] an additional amount *for your spouse*, Michelle."

**Defendant Sun Life Offsets Plaintiff's LTD Benefits With His Veterans Disability Benefits.**

74. About January 22, 2015, in a telephone call with Plaintiff, Defendant Sun Life learned that Plaintiff's claim for Veterans Disability Benefits had been granted.  At Defendant's request, Plaintiff provided Defendant Sun Life with written information concerning the award of Veterans Disability Benefits, including the Rating Decision.

75. In a letter dated March 25, 2015 ("the Claim Denial Letter"), Defendant Sun Life informed Plaintiff that it had been "advised that you have had a retroactive increase to your VA benefits," and that "[u]nder the terms of your Employer's Long Term Disability policy these benefits are considered Other Income and therefore reduce the amount of your monthly Long Term Disability Benefit."  In support of Defendant's determination, the Claim Denial Letter quoted the entirety of the Other Income Benefits Provision set forth in the Sun Life LTD Policy.

76. The Claim Denial Letter also advised Plaintiff that, based on a recalculation of his monthly LTD Benefit amount "after deducting all applicable Other Income benefits," Plaintiff's net monthly LTD Benefit was retroactively reduced to $465.00 effective as of August 1, 2013. This recalculated LTD Benefit amount reflected an offset of Plaintiff's SSDI benefits in the amount of $2150.00 and an offset of his Veterans Disability Benefits in the amount of $3,942.00.

77. The amount of offsets imposed by Defendant Sun Life is the maximum offset permitted under the terms of the Sun Life LTD Policy.  Section I of the Policy guarantees a "Minimum Monthly Benefit," which is defined as the greater of $100 or "10% of the Gross Monthly Benefit."  As Plaintiff's guaranteed Minimum Monthly Benefit is $465.00, that is, 10%

of his Gross Monthly Benefit prior to any offset, the maximum offset that Sun Life can impose on Plaintiff is $4,185.00.

78.     The Claim Denial Letter requested that Plaintiff, within thirty days of the date of the letter, send Defendant Sun Life a check to reimburse it for the alleged overpayment of $32,560.00 that Defendant Sun Life had paid Plaintiff without offsetting his Veterans Disability Benefits for the period between August 2013 and February 2015.  The Claim Denial Letter also informed Plaintiff that Defendant Sun Life had suspended his LTD Benefits effective March 1, 2015 pending receipt of Plaintiff's reimbursement of the alleged overpayment.

79.     Defendant Sun Life informed Plaintiff in the Claim Denial Letter that, if he disagreed with Defendant's decision, he might submit to Defendant Sun Life an appeal in writing within 180 days and that Defendant Sun Life "will review your claim on receipt of the written request for review, and will notify you of our decision within a reasonable period of time but no later than 45 days after the request has been received."

80.     Prior to March 25, 2015, Defendant Sun Life had issued no communication in writing indicating to Plaintiff that his LTD Benefit payments under the Athens Group LTD Plan were subject to offset by the amount of his Veterans Disability Benefits.

81.     After receiving the Claim Denial Letter, Plaintiff sent a letter to Defendant Sun Life on April 7, 2015 requesting "all copies of the documents, records, and other information relevant to" Plaintiff's Claim for LTD Benefits.  In the same letter, Plaintiff explained that "VA benefits are not actually included in the list of 'Other Income Benefits'" and asked Defendant Sun Life to state on which portion of the Other Income Benefits Provision it was relying.

82.     By letter dated April 22, 2015, "[i]n answer to [Plaintiff's] question concerning which portion of the Other Income benefits pertains to VA benefits," Defendant Sun Life

directed Plaintiff to "refer to Section[] 1.f. and Section 6" of the Other Income Benefits

Provision, quoting the following language from the provision:

> Other Income Benefits are those benefits provided or available to the Employee
> while a Long Term Disability Benefit is payable.  These Other Income Benefits,
> other than retirement benefits, must be provided as a result of the same Total or
> Partial Disability payable under this Policy.  Other Income Benefits include:

> 1.     The amount the Employee is eligible under the:
>     a.     Workers' Compensation Law; or
>     b.     Occupational Disease Law; or
>     c.     Unemployment Compensation Law; or
>     d.     Compulsory Benefit Act or Law; or
>     e.     an automobile no-fault insurance plan; or
>     ***f.     any other act or law of like intent.***

> 6.     The disability or retirement benefits under the United States Social
>     Security Act, ***or any similar plan or act***, as follows:
>     a.     Disability benefits the Employee is eligible to receive.
>     b.     Disability benefits the Employee's spouse, child or children are
>     eligible to receive because of the Employee's Total or Partial
>     Disability unless the dependent benefits are paid directly to the
>     divorced spouse or to the children in custody of the divorced
>     spouse.
>     c.     Retirement benefits received by the Employee.
>     d.     Retirement benefits the Employee's spouse, child or children
>     receive because of the Employee's receipt of retirement benefits
>     unless the dependent benefits are paid directly to the divorced
>     spouse or to the children in custody of the divorced spouse.

(Emphases in original).

83.     Enclosed with Defendant Sun Life's April 22, 2015 letter was a copy of the Sun

Life LTD Policy.  The letter stated that a copy of Plaintiff's claim file "will be mailed to you

once completed" and that, because of Plaintiff's intent to appeal Sun Life's decision to offset his

Veterans Disability Benefits, Defendant Sun Life would release the net monthly LTD Benefits

indicated in the Claim Denial Letter for the months of March and April 2015.

84.     Plaintiff received from Defendant Sun Life LTD Benefit payments in the amount of $465.00 for the months of March and April 2015.  The payments reflected the monthly offset of $3,942.00 that Sun Life attributed to Plaintiff's monthly Veterans Disability Benefits.

85.     On June 11, 2015, Plaintiff sent a letter to the Plan Administrator of the Athens Group LTD Plan pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and, citing DOL Regulations, 29 C.F.R. § 2520.102-2, specifically requested "any communications to [him]self or other Plan participants, that explain 'in a manner calculated to be understood by the average plan participant' whether and how Veteran's Disability Compensation is considered 'Other Income Benefits' under the Plan."

86.     In response to Plaintiff's June 11, 2015 ERISA § 104(b) request, Debbie Leigh of Athens Group Holdings, LLC, by letter dated June 18, 2015, stated that "Athens Group has never relayed any communications to you, or anyone else covered by the Sun Life Long Term Disability policy, regarding whether and how Veteran's Disability Compensation would be considered 'Other Income Benefits' under the plan."

87.     Without the offset for Veterans Disability Benefits, the monthly benefit that Defendant Sun Life would be required to pay to Plaintiff would be approximately $2,500 instead of $465.00.

**Plaintiff Appeals and Exhausts Administrative Remedies Under the Sun Life LTD Policy**

88.     Plaintiff requested an appeal of Defendant's decision to offset his LTD Benefits by his Veterans Disability Benefits in a letter dated June 10, 2015.  In that letter, Plaintiff cited the First Circuit decision in *Hannington v. Sun Life & Health Insurance Company* and the Eighth Circuit decision in *Riley v. Sun Life & Health Insurance Company* and explained that Veterans Disability Benefits are not similar to benefits awarded under the United States Social Security

Act and that they are not in any sense a "compulsory" benefit but are voluntarily provided by the United States Government to care for and support our veterans.  In addition, Plaintiff's appeal letter explained that the Other Income Benefits Provision in the Policy on which Defendant Sun Life relied in the Claim Denial Letter does not mention Veterans Disability Compensation or Veterans Disability Compensation.

89.     Citing ERISA § 102, 29 U.S.C. § 1022, Plaintiff's June 10, 2015 appeal letter stated that, to the extent that Defendant Sun Life claimed that the Certificate constitutes the Summary Plan Description, the Certificate neither mentions that Veterans Disability Benefits may be offset against LTD Benefits nor contains any language "written in a manner calculated to be understood by the average plan participant" as permitting such an offset.

90.     Citing 38 U.S.C. § 5301(a)(1), Plaintiff's June 10, 2015 appeal letter explained that Veterans Disability Benefits are "exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary" and that Defendant Sun Life could not avoid the required exemption by claiming to withhold and offset Plaintiff's LTD Benefits in the amount of his Veterans Disability Benefits.  Finally, Plaintiff's appeal letter explained that he had spent all of his LTD Benefits from Sun Life to pay bills, buy food, and pay for medical expenses.

91.     In a letter dated July 14, 2015 and signed by Julian Croteau, Senior Benefit Consultant of Appeals and Resolutions at Sun Life ("the Appeal Denial Letter"), Defendant Sun Life denied Plaintiff's appeal of Sun Life's decision to offset Plaintiff's LTD benefits and stated that "[w]e have completed our review and have determined that the decision to offset your Long Term Disability benefit by the monthly Veteran Benefit you are receiving is appropriate."  The Appeal Denial Letter added that "[i]n the policy provisions cited below, we have explained why

the offset is correct," and quoted the entirety of the Other Income Benefits Provision in the Sun Life LTD Policy.

92.     The Appeal Denial Letter stated that "[t]he policy states that Other Income Benefits are those benefits provided or available to an Employee while a Long Term Disability benefit is payable" and that "[s]pecifically, Veteran Benefits would be considered disability or retirement benefits under the United States Social Security Act, or any similar plan or act or any other act or law of like intent."  The letter acknowledged the First Circuit and the Eighth Circuit's disagreement with Sun Life's interpretation that the Veteran's Benefits Act was similar to the Social Security Act and the Railroad Retirement Act.  The letter also cited decisions such as *High v. E-Systems, Inc.* from the Fifth Circuit and *Holbrooks v. Sun Life Assurance Company of Canada* from the Sixth Circuit to support Defendant's interpretation of the Other Income Benefits Provision as permitting an offset of LTD Benefits with Veterans Disability Benefits.

93.     The Appeal Denial Letter reaffirmed Defendant's decision to offset Plaintiff's Veterans Disability Benefits against his LTD Benefits and reduce Plaintiff's monthly net LTD Benefits to $465.00 after offsetting both his SSDI and Veterans Disability Benefits, and Sun Life's determination that Plaintiff had been overpaid for the amount of $32,560.00.

94.     As a result of Plaintiff's appeal of Defendant's adverse benefits decision, Plaintiff has exhausted his administrative remedies under the Plan and the Policy.  Additionally, because neither the Claim Denial Letter nor the Appeal Denial Letter met the requirements of ERISA § 503, 29 U.S.C. § 1033, or the terms of the Plan's claim procedures, Plaintiff's claim for benefits would be otherwise deemed exhausted.

**Sun Life Has Ceased Making Any LTD Benefit Payments to Recover the "Overpayment"**

95.      Defendant Sun Life claimed in the March 25, 2015 Claim Denial Letter that its LTD Benefit payments made to Plaintiff for the period from August 2013 through February 2015, which did not include an offset of Plaintiff's Veterans Disability Benefits, constituted an overpayment of his LTD Benefits.  Before Plaintiff submitted his appeal and Defendant Sun Life rendered a decision on it, the Claim Denial Letter demanded that Plaintiff pay Defendant Sun Life $32,560.00 "within 30 days from the date of this letter."  The Claim Denial Letter stated that Plaintiff's LTD Benefits "have been suspended effective March 1, 2015 pending receipt of this overpayment reimbursement."

96.      Contrary to the statements in the Claim Denial Letter, Section IV of the Sun Life LTD Policy only requires that reimbursement for any "overpayment" amount be made "within 31 days of the award."  As there was no claim by Defendant Sun Life of overpayment until the March 25, 2015 letter, no repayment was due until at least April 25, 2015.  As Plaintiff appealed Defendant's March 25, 2015 determination and Defendant Sun Life made no final determination on Plaintiff's appeal until July 14, 2015, the reimbursement was not due under the terms of the Policy until at least August 14, 2015.

97.      It was not until receipt of Plaintiff's April 7, 2015 letter requesting "all copies of the documents, records, and other information relevant to" Plaintiff's Claim for LTD Benefits that, by letter dated April 22, 2015, Defendant Sun Life informed Plaintiff that it would release the net monthly LTD Benefits indicated in the Claim Denial Letter temporarily for the months of March and April 2015.

98.      Beginning on July 11, 2015, Defendant Sun Life has ceased making any further LTD Benefit payments to Plaintiff pursuant to the Sun Life LTD Policy.

**Sun Life Fails to Disclose That Veterans Disability Benefits May Be Offset**

99.     Section VI of the Sun Life LTD Policy obligates Defendant Sun Life to provide the Certificate to the Plan Sponsor of each insured plan "for delivery to each Employee" under the Policy.

100.     The Sun Life LTD Policy requires that Defendant Sun Life provide information in the Certificate about participants' benefits, including a summary of "the insurance benefits an Employee is entitled to" and "any limitations, exclusions or requirements that may apply."  To do so, the Certificate is supposed to describe the terms of eligibility for benefits under the terms of a Sun Life LTD Policy, the amount of benefits available under the Policy, the exclusions under the Policy, termination of benefits, and the general rights and duties of Defendant Sun Life as payor of benefits and of participants in plans insured by Defendant Sun Life.

101.     Nowhere in the Certificate is any claimed offset for Veterans Disability Benefits described in plain English.  Defendant Sun Life took no affirmative steps to ensure that participants understood that there was an offset for Veterans Disability Benefits.  Based on the documents provided, Defendant Sun Life has not provided a single document – until Defendant Sun Life attempted to assert or collect an offset – that disclosed that Veterans Disability Benefits could be offset against LTD Benefits.

102.     The Certificate of Coverage is signed by the Chief Executive Officer of Sun Life.

103.     The only description in the Certificate of the types of income that may be offset against LTD Benefits is the word-for-word quotation of the entire Other Income Benefits Provision found in the Sun Life LTD Policy.

104.     Defendant Sun Life notified Plaintiff that it had granted his request for LTD Benefits in a letter dated December 11, 2012 ("Benefits Letter").  Defendant Sun Life sent the

Benefits Letter to Plaintiff.  Upon information and belief, the Benefits Letter is a form letter and is substantially similar or identical to letters sent to and received by other members of the Class.

105.    In response to Defendant's November 7, 2012 letter, Plaintiff specifically provided Defendant Sun Life with his Form DD-214 informing Defendant Sun Life that he was honorably discharged from active military duty in 1992.  Despite Defendant's receipt of that information from Plaintiff and despite the November 7, 2012 letter's request to Plaintiff that he inform Defendant Sun Life of any award of benefits from the VA, the description of benefits eligible for offset in the Benefits Letter does not list Veterans Disability Benefits as a form of income eligible for offset; nor does it list a category of income that understandably includes Veterans Disability Benefits.

106.    Upon information and belief, all group LTD Policies issued by Sun Life that were issued and/or renewed since approximately January 1, 2005 contain substantially similar descriptions of the income that may be offset against LTD Benefits as in the LTD Policy issued to Athens Group.  All state that LTD Benefits may be offset by income received under a "Compulsory Benefit Act or Law," "any other act or law of like intent," or "the United States Social Security Act, or any similar plan or act."  They do not mention Veterans Disability Benefits.

107.    On information and belief, all Certificates of Coverage issued by Sun Life for Group LTD Policies that were issued and/or renewed since approximately January 1, 2005 contain substantially similar descriptions of the income that may be offset against LTD Benefits as in the Certificate of Coverage issued to Athens Group.  The Certificates of Coverage state that LTD Benefits may be offset by income received under a "Compulsory Benefit Act or Law," "any

other act or law of like intent," or "the United States Social Security Act, or any similar plan or

act."  The Certificates of Coverage do not mention Veterans Disability Benefits.

108.    According to the Policy and the Certificate provided to Plaintiff by Ms. Leigh of

Athens Group Holdings LLC on June 18, 2015, Defendant Sun Life provided the Certificate to

Athens Group "for delivery to each Employee."  On information and belief, Defendant Sun Life

provides the Certificate or a substantially similar Certificate to the Sponsors of all LTD plans

funded or insured pursuant to a Policy issued by Sun Life ("LTD Plans").  On information and

belief and the discovery to date, none of the Certificates contains any explanation that Veterans

Disability Benefits may be offset against LTD Benefits.

109.    On information and belief, Defendant Sun Life does not issue any document or

statement that explains to persons covered by Sun Life Group LTD Policies that Veterans

Disability Benefits may be offset until after the person has begun receiving them and Defendant

Sun Life has determined to offset them against their LTD Benefits.

**The "Summary Plan Description" Does Not Disclose That Veterans Disability Benefits Is An Offset Under Sun Life's Policy**

110.    ERISA § 102(a), 29 U.S.C. § 1022(a), requires that a "summary plan description

of any employee benefit plan shall be furnished to participants and beneficiaries as provided in

section 104(b)."  ERISA § 102(a) also requires that the summary plan description ("the SPD")

include the information required by ERISA § 102(b), 29 U.S.C. § 1022(b), and "be written in a

manner calculated to be understood by the average participant" and "be sufficiently accurate and

comprehensive to reasonably apprise such participants and beneficiaries of their rights and

obligations the plan."  ERISA § 102(b) requires that the SPD contain, among other things, a

description of "the plan's requirements respecting eligibility for participation or benefits"

including the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."

111.    The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-2, reiterate that an SPD "shall be written in a manner calculated to be understood by the average participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the terms of the plan."  29 C.F.R. § 2520.102-2(a) specifies that an SPD "will usually require . . . the use of clarifying examples and illustrations" to make the terms of the SPD understandable to the average participant.

112.    The DOL Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-3(j), require the SPD to include a description of "[t]he plan's requirements respecting eligibility for participation and for benefits," and "also include a statement of the conditions pertaining to eligibility to receive benefits, and a description or summary of the benefits."  DOL Regulation 29 C.F.R. § 2520.102-3(l) requires the SPD to include "a statement clearly identifying circumstances which may result in . . . offset . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of" the plan's description of benefits.

113.    In response to Plaintiff's June 10, 2015 request under ERISA § 104(b) to the Plan Administrator of the Athens Group LTD Plan, Ms. Leigh of Athens Group Holdings LLC attached to her June 18, 2015 letter two documents, namely, the "Sun Life Full Policy Document" and the "Sun Life Summary Plan Description."  The former was the Sun Life LTD Policy, which Ms. Leigh designated as the "full plan document" of the Athens Group LTD Plan,

while the latter was the Certificate issued along with the Policy, which she designated as the "summary plan description" of the Athens Group LTD Plan.

114.    The "summary plan description" does not contain language that could be reasonably calculated to be understood by the average plan participant to identify Veterans Disability Benefits to be income eligible to be offset under the terms of the Policy.  Specifically, the "summary plan description" does not mention or state that benefits or compensation provided by or through the VA would qualify as "Other Income Benefits" or as an offset to benefits under the Sun Life LTD Policy.

115.    The "Benefit Provisions" section for LTD Benefits in the "summary plan description" explains how to calculate the LTD benefits payable to a claimant under the Policy by "subtract[ing] Other Income Benefits" from a percentage of the claimant's pre-disability "Total Monthly Earnings."  The description of "Other Income Benefits" in the same section of the "summary plan description" simply quotes the entire Other Income Benefits Provision set forth in the Sun Life LTD Policy.  It neither mentions veterans benefits, including Veterans Disability Benefits, nor reasonably describes in a manner understood by the average plan participant that veterans benefits, including Veterans Disability Benefits, are among the types of "income" that may be offset against LTD Benefits under the Sun Life LTD Policy.

116.    To the extent that Veterans Disability Benefits is a form of income eligible for offset under the terms of the Sun Life LTD Policy, the "summary plan description" fails to comply with ERISA § 102 because it does not describe the conditions that will result in a loss or offset of benefits in a manner calculated to be understood by the average participant. Specifically, the "summary plan description" fails to clearly identify the receipt of Veterans Disability Benefits, or any veterans benefits, as a circumstance that may result in any denial, loss

or offset of any benefits that a participant or beneficiary might otherwise reasonably expect to receive under the Policy.  The "summary plan description" does not contain any clarifying examples or illustrations that would inform an average plan participant that Veterans Disability Benefits are included in the listed categories of income eligible for offset.  The average plan participant would not have understood from the "summary plan description" that the receipt of Veterans Disability Benefits would constitute income eligible for offset under the terms of the Sun Life LTD Policy.

117.    Upon information and belief, the Plan Administrators of the LTD Plans funded or insured pursuant to a Sun Life LTD Policy, including Athens Group, provided to participants the Certificate or a substantially similar Certificate as the "summary plan description" of their respective LTD Plans.  Defendant Sun Life provided the Certificates to the Plan Administrators "for delivery to Employees" which were intended to be used as the substantive information for the "summary plan description."  On information and belief, none of the "summary plan descriptions" contains any explanation that Veterans Disability Benefits may be offset against LTD Benefits.

118.    On information and belief, the Plan Administrators of the LTD Plans do not issue any communication to participants regarding whether Veterans Disability Benefits may be offset against LTD Benefits.

**Defendant Sun Life's Fiduciary Status**

119.    Defendant Sun Life is a fiduciary pursuant to ERISA §3(21)(A), 29 U.S.C. §1002(21)(A), with respect to all LTD Plans insured pursuant to the Sun Life LTD Policy, including the Athens Group LTD Plan.  Based on the provisions in the Certificate and Policy, Defendant Sun Life is a fiduciary with respect to making benefits determinations in all group

LTD Plans insured by Defendant Sun Life.  The Policy authorizes and obligates Defendant Sun Life to pay benefits under the terms of the Policy.  Section VII of the Policy states that "Sun Life must receive Notice and Proof of Claim prior to any payment under this Policy," and that, if a claim is denied, "Sun Life will review the claim on receipt of the written request for review."  As such, Defendant Sun Life had the authority and exercised it to review claims for LTD Benefits and appeals of claim denials by interpreting the Policy to mean that Plaintiff's and the Class's Veterans Disability Benefits can be offset against LTD Benefits, by making determinations as to the amount of benefits owed to Plaintiff and the Class, and by reducing the amount of benefits paid to them and seeking to recover amounts that Sun Life determines were "overpaid."

120.    Based on the provisions in the Policy, Defendant Sun Life is a fiduciary with respect to providing participants with information about the benefits available to them in all LTD Plans insured by Defendant Sun Life.  Section IV of the Sun Life LTD Policy obligates Defendant Sun Life to provide the Certificate to the Plan Sponsor of each insured plan "for delivery to each Employee" covered by the Policy.  The Certificate, pursuant to the terms of the Policy, must contain information about participants' benefits, including a summary of "the insurance benefits an Employee is entitled to" and "any limitations, exclusions or requirements that may apply."  On information and belief, Defendant Sun Life also drafts and provides the Certificate to participants in each LTD Plan insured by Defendant Sun Life with the intent that the information in the Certificate will be the basis for or the information contained in any summary plan description.

**The Sun Life LTD Policy Does Not Permit an Offset For Veterans Disability Benefits**

121.    In Defendant's April 22, 2015 letter in response to Plaintiff's request for an explanation as to which portion of the Other Income Benefits Provision it relied on in deciding to

offset his LTD Benefits by the amount of his Veterans Disability Benefits, Defendant Sun Life

quoted Sections 1 and 6 of the Policy, specifically directed Plaintiff to refer to Sections 1(f) and

6 of the Policy, and bolded and italicized the language "any other act or law of like intent" in

Section 1(f) and "or any similar plan or act" in Section 6 as follows:

1.    The amount the Employee is eligible under the:
    a.    Workers' Compensation Law; or
    b.    Occupational Disease Law; or
    c.    Unemployment Compensation Law; or
    d.    Compulsory Benefit Act or Law; or
    e.    an automobile no-fault insurance plan; or
    *f.*    ***any other act or law of like intent.***

6.    The disability or retirement benefits under the United States Social
    Security Act, ***or any similar plan or act*** . . . .

(Emphases in original).

122.    In its Appeal Denial Letter, while quoting the entirety of the Other Income

Benefits Provision, Defendant Sun Life specifically stated that "Veteran Benefits would be

considered disability or retirement benefits under the United States Social Security Act, or any

similar plan or act or any other act or law of like intent."  In other words, Defendant Sun Life

justified its denial of Plaintiff's appeal on its decision to offset his Veterans Disability Benefits

by again relying on the same sections of the Other Income Benefits Provision, which permit an

offset for (a) amounts under "any other act or law of like intent" pursuant to Section 1(f) or (b)

"[t]he disability or retirement benefits under the United States Social Security Act, or any similar

plan or act" pursuant to Section 6.  In the same Appeal Denial Letter, Sun Life also cited the

Tenth Circuit's decision in *Holbrooks v. Sun Life Assurance Company of Canada* for the

statement that "[t]here is nothing ambiguous about the term 'Compulsory Act or Law,'" and thus

sought to justify the offset of Plaintiff's Veterans Disability Benefits by relying on Section 1(d)

of the Other Income Benefits Provision, which permits an offset for amounts under a

"Compulsory Benefit Act or Law."   Sun Life also cited the Fifth Circuit decision in *High v. E-Systems, Inc.* for the statement that "VA disability benefits fell under the heading of '<u>benefits payable under any other group disability plan</u>'" (underlying by Defendant Sun Life), and thus sought to justify the offset of Plaintiff's Veterans Disability Benefits by relying on Section 6 of the Other Income Benefits Provision and/or, for the first time, by relying on Section 4 of the provision, which states:

> 4.      Any disability income benefits the Employee is eligible for under:
>    a.      any other group insurance plan of the Employer;
>    b.      any governmental retirement system as a result of the Employee's job with his Employer.

Neither the Claim Denial Letter nor the Appeal Denial Letter states that the Other Income Benefits Provision specifically identifies any form of benefits from the VA as an offset for LTD Benefits.

### *Veterans Benefits*

123.      There is no Veterans Benefit Act.  A variety of laws were consolidated and codified in Title 38, which provides a comprehensive array of benefits and services to veterans. Title 38 includes a broad range of benefits, including life insurance policies, educational assistance, and loans to purchase or construct a primary residence.

124.      One of the benefits provided under Title 38, as set forth in 38 U.S.C. § 1110, is compensation for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war ("Veterans Disability Benefits").  Such compensation is unavailable to veterans who have been dishonorably discharged or whose disability is the result of the veteran's willful misconduct or abuse of alcohol or drugs.  Veterans Disability Benefits, like other forms of benefits awarded under Title

38, act as an incentive and a form of recognition for members of the military who were discharged from service under conditions other than dishonorable.

125.    As explained by the website of the United States Department of Veterans Affairs, at *http://www.benefits.va.gov/COMPENSATION/types-compensation.asp*, "VA disability compensation provides monthly benefits to Veterans in recognition of the effects of disabilities, diseases, or injuries incurred or aggravated during active military service.  The program also provides monthly payments to surviving spouses, dependent children, and dependent parents in recognition of the economic loss caused by a Veteran's death during military service or, after discharge from military service, as a result of a service-connected disability."

### *Veterans Disability Benefits Does Not Qualify As Income*

126.    The Sun Life LTD Policy only permits offsets from "Other Income Benefits." The term "income" is not defined in the Policy or the Certificate" or "Certificate of Coverage."

127.    As explained on the website of the United States Department of Veterans Affairs at *http://www.benefits.va.gov/COMPENSATION/types-compensation.asp*, Veterans Disability Benefits are "[a] tax-free monetary benefit paid to Veterans with disabilities that are the result of a disease or injury incurred or aggravated during active military service."

### *Veterans Disability Benefits Are Not Provided, or Similar to Benefits Provided, Pursuant to a Compulsory Benefit Act or Law or the United States Social Security Act*

#### Purposes and Intent

128.    The purpose of Veterans Disability Benefits under Title 38, including Veterans Disability Benefits under 38 U.S.C. § 1110, is to care for and support those who have served in the Armed Forces of the United States and their families and to prevent them from being disadvantaged by their military service.  According to the U.S. Social Security Administration, Office of Retirement and Disability Policy, *Veterans Who Apply for Social Security Disabled-*

*Worker Benefits After Receiving a Department of Veterans Affairs Rating of 'Total Disability'*

*for Service-Connected Impairments: Characteristics and Outcomes*, Social Security Bulletin,

Vol. 74 No. 3 (2014), *available at http://www.ssa.gov/policy/docs/ssb/v74n3/v74n3p1.html*,

Veterans Disability Benefits are "intended to compensate for the average wage loss for someone

with a specific impairment."

129.    The Sun Life LTD Policy does not define the phrase "Compulsory Benefit Act or

Law."

130.    Compulsory benefit laws and the federal social security laws have purposes

different than those of Veterans Disability Benefits awarded under Title 38.  For example, the

purpose of worker's compensation is to allocate the cost of workplace injuries to employers and

their customers rather than society at large, to guarantee a no-fault source of compensation for

injured employees, to encourage workplace safety measures, and to determine and limit the

amount of employers' liability for workplace injuries.  Similarly, the purpose of Social Security

Disability Insurance, as provided in 42 U.S.C. § 423(d), is to provide replacement compensation

for workers who are no longer able to engage in any substantial gainful work existing in the

national economy.

131.    Compulsory benefit laws require private actors to participate in a particular state

or federal benefits program.  For example, the federal social security laws are compulsory

because they require private employers and employees to contribute and participate in an

insurance-like system that funds benefits received by employees.  Similarly, the Railroad

Retirement Act is compulsory because it compels participation by levying federal taxes on

railroad companies, associations, labor organizations, and employees that are earmarked to fund

benefits for qualifying former railroad employees.  Finally, most state worker's compensation

programs are compulsory because they compel private actors to award or subsidize benefits on the basis of an employment relationship.

132.    Veterans benefits generally and Veterans Disability Benefits specifically are not "compulsory" or similar to benefits provided under the federal social security laws.  They are voluntarily provided by the United States government because Congress has chosen to provide financial support to those injured during military service.  Nothing compels the United States Congress to provide Veterans Disability Benefits to veterans.  Nor does the United States Government compel any third party to provide service-connected disability benefits to veterans as employers and employees are required under the federal social security laws to participate in an insurance-like system to provide replacement earnings to disabled workers.  Veterans Disability Benefits are also not similar to SSDI benefits in that Veterans Disability Benefits are specifically intended to compensate for wage loss for veterans with disabilities or injuries connected to military service while SSDI benefits are not.

<u>Qualification for Benefits</u>

133.    A veteran qualifies for Veterans Disability Benefits if the veteran suffers from a disability that was caused or aggravated by his or her active-duty military service.  A veteran does not need to show that the disability affects the veteran's earning capacity in order to qualify for Veterans Disability Benefits.  According to the U.S. Social Security Administration, Office of Retirement and Disability Policy, *Veterans Who Apply for Social Security Disabled-Worker Benefits After Receiving a Department of Veterans Affairs Rating of 'Total Disability' for Service-Connected Impairments: Characteristics and Outcomes*, Social Security Bulletin, Vol. 74 No. 3 (2014), *available at http://www.ssa.gov/policy/docs/ssb/v74n3/v74n3p1.html.* Veterans'

Disability Benefits are paid "regardless of whether the impairment actually causes earnings losses for the individual."

134.    Loss of earning power is not a prerequisite to a veteran's entitlement to Veterans Disability Benefits.  Veterans Disability Benefits are not contingent upon a veteran's present employment.  According to the U.S. Social Security Administration, Office of Retirement and Disability Policy, *Veterans Who Apply for Social Security Disabled-Worker Benefits After Receiving a Department of Veterans Affairs Rating of 'Total Disability' for Service-Connected Impairments: Characteristics and Outcomes*, Social Security Bulletin, Vol. 74 No. 3 (2014), *available at http://www.ssa.gov/policy/docs/ssb/v74n3/v74n3p1.html*, "veterans who receive disability compensation cash benefits are free to work and are not limited in the amount of earnings they may receive, even when their single or combined impairment ratings are 100%."

135.    By contrast, most compulsory benefit laws and federal social security laws, including those specifically listed by the Sun Life LTD Policy for offsets, typically condition eligibility to receive benefits on employment.  For example, Social Security disability is conditioned upon employment and requires a claimant to show disability in his/her own occupation and an inability to work in any occupation for which the claimant is reasonably qualified.  Likewise, for Workers' Compensation benefits, the claimant must be able to show not only a disability, but also employment when injured and a corresponding loss of earning capacity.

<u>Calculation of Benefits</u>

136.    The amount of Veterans Disability Benefits awarded is based on a disability rating assigned to reflect the severity of the veteran's service-connected disabilities, and is unrelated to the veteran's rank, length of service, or amount of pay received while serving.  The

benefit award may be enhanced by special monthly compensation in cases of severe service-connected disability such as loss of one or more creative organs, if the veteran is housebound as a result of his or her injuries, or if the veteran is in need of regular medical or nursing assistance. Veterans Disability Benefits are not linked to a veteran's past relationship with an employer or to the veteran's pre-disability income.

137.    By contrast, benefits provided by compulsory benefits laws and federal social security laws are frequently based on the amount of income earned during employment.  For example, an award for SSDI benefits is based on salary and work credit.

### The Standard for Awarding Benefits

138.    The standard for awarding Veterans Disability Benefits is pro-claimant.  Pursuant to 38 U.S.C. § 5107(b), when a veteran submits a claim for service-connected disability benefits, the Secretary of Veterans Affairs must consider all lay and medical information, and when the evidence is in equipoise, "the Secretary shall give the benefit of the doubt to the claimant."

### The Funding Source

139.    Veterans Disability Benefits are funded from the general budget of the Department of Veterans Affairs; Veterans Disability Benefits are not funded by a tax on the employers and employees of a particular industry.

140.    By contrast, compulsory benefit laws, as the name implies, compel participation by private parties through a specific tax or specially imposed payment.  For example, the Black Lung Benefits Act requires coal mine operators to pay monthly payments and medical benefits directly to coal miners for diseases arising from their employment in coal mines, and workers' compensation benefits are funded by employers.  Similarly, the Social Security program is funded through a special, specific federal payroll tax on employers and employees.

<u>Plaintiff's Veterans Disability Award Illustrates These Differences</u>

141.    Plaintiff's VA Letter and attached Rating Decision demonstrate many of the differences between Plaintiff's benefits and the categories of income explicitly eligible to be offset in the Sun Life LTD Policy.

142.    Pages 1 and 2 of the Rating Decision explain that Plaintiff's Veterans Disability Benefits was awarded based on (1) whether Plaintiff's disability was connected to his military service, and (2) the rating assigned to each disability.  The "rating" for each disability is calculated based on a range of factors *other than* the impact of Plaintiff's condition on his ability to earn income.

143.    For example, pages 9 and 10 of the Rating Decision explain that Plaintiff's multiple sclerosis was service-connected and that the VA's 100% evaluation of Plaintiff's condition was based on Plaintiff's "loss of use of both feet" and "[t]he evidence show[ing] you are unable to ambulate without the aid of a cane, walker or wheelchair."  This rating decision is not based on Plaintiff's lost income or earning potential.

144.    Page 10 of the Rating Decision explains that the VA's 40% evaluation of Plaintiff's right upper extremity weakness was assigned based on his "moderate incomplete paralysis of the major extremity" and service connection was established based on "the service-connected disability of multiple sclerosis with loss of use of both feet."  This rating decision is not based on Plaintiff's lost income or earning potential.

145.    The VA Letter also notified Plaintiff that he is entitled to "automotive and adaptive equipment" and "specially adapted housing" and that he may be eligible for other benefits available to veterans, including health and other benefits for dependents, medical care

provided by the VA health system, tax benefits provided under state law, vocational rehabilitation and employment services, and waiver of government life insurance premiums.

### COUNT I
### CLAIM FOR DISCRIMINATION PURSUANT TO USERRA § 4311, 38 U.S.C. § 4311
### (On Behalf of the Participant Class Members Only)

146.    Plaintiff repeats and re-alleges the allegations contained in the forgoing paragraphs as if fully set forth herein.

147.    USERRA § 4311(a), 38 U.S.C. § 4311(a), provides in relevant part that "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied … any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."

148.    USERRA § 4303(4)(A), 38 U.S.C. § 4303(4)(A), defines the term "employer" to include not only "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities" but also those "to whom the employer has delegated the performance of employment-related responsibilities."

149.    USERRA § 4303(2), 38 U.S.C. § 4303(2), defines the term "benefit of employment" to mean "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

150.    As set forth in 38 U.S.C. § 1100, the United States government provides Veterans Disability Benefits to compensate veterans for service-related disabilities: "For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs."

151.    Employers such as the Athens Group sponsor the LTD Plans and have the Plan funded by and insured with a Sun Life LTD Policy to provide income replacement as a benefit to their employees in the event that their employees cannot work because of a disability.  As such, LTD Benefits provided under those LTD Plans constitute a term, condition, or privilege of employment, and are a benefit of employment within the meaning of USERRA § 4303(2).

152.    Pursuant to Sun Life's LTD Policy and Certificate of Coverage, Defendant Sun Life requires its customers – employers such as the Athens Group – to  delegate to Defendant Sun Life the performance of the employment-related responsibility of rendering determinations on eligibility for and the amount of benefits under the LTD Plans for which it provides coverage. The terms of the Sun Life LTD Policy that insures each of these LTD Plans, including the Athens Group LTD Plan, require the employers to delegate to Sun Life the responsibility of receiving, reviewing, and rendering determinations on participants' claims for benefits and appeals.  As such, Defendant Sun Life meets the definition of an employer of Plaintiff and the Servicemembers in the Class within the meaning of USERRA § 4303(4)(A).

153.     None of the Other Income Benefits set forth in the Sun Life LTD Policy, which lists the types of income that may be offset against the LTD Benefits payable under the terms of the Policy, explicitly references Veterans Disability Benefits as income that can be used as an offset under the Plan.  Nonetheless, Defendant Sun Life has adopted, applied and continues to apply a policy of treating Veterans Disability Benefits as an offset against LTD Benefits payable under the Sun Life LTD Policy.

154.     Veterans Disability Benefits are available only to persons who have been servicemembers and veterans with disabilities resulting from performance of service in a uniformed service.  Veterans Disability Benefits are not available to those who have never been members of or served in a uniformed service.  By adopting and applying a policy of reducing LTD Benefits in the amount of Veterans Disability Benefits, Defendant Sun Life has adopted, applied and continues to apply a policy of reducing and therefore denying benefits, on the basis of membership or performance of service in a uniformed service, the amount of LTD Benefits payable to a participant who receives Veterans Disability Benefits.

155.     By adopting and applying such a policy that denies employees certain benefits based on benefits received as a result of their membership or performance in a uniformed service, Defendant Sun Life has violated USERRA § 4311(a), 38 U.S.C. § 4311(a), by denying a benefit of employment to Plaintiff and members of the Class on the basis of membership or performance of service in a uniformed service.

156.     As Defendants' interpretation facially discriminates against employees based on their service in and based on their receipt of certain benefits that they eligible to receive based on their service in the uniformed services, upon information and belief, Defendant Sun Life knowingly violated or acted with reckless disregard of the requirements of USERRA.

## COUNT II
## CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(A)(1)(B), 29 U.S.C.  1132(A)(1)(B)

157.     Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

158.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

159.     Pursuant to Section VII of the Policy, Defendant Sun Life is the entity that receives and makes any decisions concerning claims, and receives and makes decisions regarding any appeals.  Pursuant to the cover page of the Policy, Defendant Sun Life is the entity that has agreed to pay and is ultimately responsible for paying benefits under the Policy and therefore under the Plans that Defendant Sun Life insures.

160.     According to the first page of the Sun Life LTD Policy, "[t]his policy is issued in consideration of the Application of the Policyholder . . . and continued payment of premiums by the Policyholder."  As such, Defendant Sun Life is obligated to pay benefits under the terms of the Policy to those eligible employees whose employers purchased the policy and paid premiums in the amounts required by the Policy, and therefore under the terms of the LTD Plan.

161.     Section IV of the Sun Life LTD Policy, which sets forth the Other Income Benefits Provision, provides the only categories of income that may be offset against these benefits.  None of the categories of income explicitly references Veterans Disability Benefits as income that can be used as a set-off under the Plan.

162.     As an insurance contract, the Sun Life LTD Policy must be interpreted in light of the reasonable expectations of participants in the Plans whose employers provide disability benefits through the purchase of a policy from Defendant Sun Life.

163.     The Sun Life LTD Policy issued to fund or insure the Athens Group LTD Plan does not contain any discretionary clause.  As such, Defendant Sun Life is not entitled to any discretion in interpreting the terms of the Athens Group LTD Plan.  Upon information and belief, the Policies issued to fund or insure other LTD Plans in which members of the Class are participants also do not contain discretionary clauses.  As such, Defendant Sun Life is also not entitled any discretion in interpreting the terms of those LTD Plans.

164.     Veterans Disability Benefits cannot reasonably be construed as constituting an offset to income paid under the Sun Life LTD Policy.  Veterans Disability Benefits are not and cannot reasonably be construed as amounts provided under a "Worker's Compensation law," an "Occupational Disease Law," an "Unemployment Compensation Law," a "Compulsory Benefit Act or Law," or "an automobile no-fault insurance plan."  Veterans Disability Benefits are not and cannot reasonably be construed as amounts provided under an "act or law of like intent" compared to any "Worker's Compensation law," "Occupational Disease Law," "Unemployment Compensation Law," "Compulsory Benefit Act or Law," or "automobile no-fault insurance plan."  Veterans Disability Benefits are not and cannot reasonably be construed as amounts paid under the United States Social Security Act or under "any similar plan or act" compared to the Social Security Act.

165.     To the extent that the terms in the Policy drafted by Defendant Sun Life, including language such as "Worker's Compensation law," "Occupational Disease Law," "Unemployment Compensation Law," "Compulsory Benefit Act or Law," or "automobile no-

fault insurance plan," "any act or law of like intent," and "any similar plan or act," are ambiguous in their application to Veterans Disability Benefits, such ambiguity should be resolved against Defendant Sun Life as the drafter of these provisions.

166.    By deciding to offset benefits under the Policy with Veterans Disability Benefits, Defendant Sun Life violated the terms of the Plan and breached its obligation to pay LTD Benefits under the Sun Life LTD Policy and the terms of the LTD Plans.

### COUNT III
### CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA § 404(A)(1)(A), (B) & (D), 29 U.S.C. § 1104(A)(1)(A), (B) & (D) TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN

167.    Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

168.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a), requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and (A) "for the exclusive purpose of . . . of providing benefits to participants and their beneficiaries" and (B) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" and (D)  in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

169.    Among other duties, Sun Life, as a fiduciary had an obligation to follow the terms of the Plan, to the extent that those terms were consistent with ERISA.  Nothing in ERISA mandates an offset of benefits under an ERISA plan as a result of benefits from some other source.

170.     Section IV of the Policy requires Sun Life to pay benefits and does not provide for an offset for Veterans Disability Benefits.  By interpreting its Policy to provide for an offset that did not exist under the Policy, Sun Life failed to pay benefits under the policy and retain monies that it would have otherwise had to pay pursuant to its own Policy.

171.     No prudent and loyal fiduciary would have interpreted the Sun Life Policy to provide for an offset by the amount of Veterans Disability Benefits where no such exclusion was provided under the Policy, an interpretation of the Policy would violate USERRA and no such offset had been properly disclosed.

172.     Defendant Sun Life should have been aware of facts that such an interpretation served its own interests, rather than those of the participants of the Plans, was not consistent with the Policy, likely violated USERRA and had not been properly disclosed.  In the event that Sun Life did not know or were not aware of such facts it was required to undertake an appropriate investigation to make that determination in order to fulfill their fiduciary duties and to comply with Section IV of the Plan Document.

173.     As a result, by reaching a determination that served its own interests, was inconsistent with the terms of the Plan, any disclosures and USERRA, Defendant Sun Life breached its fiduciary duties under ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A),(B) and (D).  As a result of such breaches, Plaintiff and the Class are entitled, in addition to any relief provided pursuant to ERISA § 502(a)(1)(B) to (A) an order requiring disgorgement of any profits earned by Defendant Sun Life on benefits wrongfully withheld or untimely distributed under the terms of the governing Plan or prejudgment interest, whichever is greater, and (B) an injunction, to the extent not permitted by ERISA § 502(a)(1)(B), requiring

Defendant Sun Life to administer the Plan without applying an offset for Veterans Disability

Benefits to Plaintiff and the Class.

### <u>COUNT IV</u>
### CO-FIDUCIARY LIABILITY PURSUANT TO ERISA § 405(A), 29 U.S.C. § 1105(A)

174.    Plaintiff repeats and re-alleges the allegations contained in the forgoing

paragraphs as if fully set forth herein.

175.    Section 405(a) of ERISA, 29 U.S.C. § 1105(a), provides that "in addition to any

liability which he may have under any other provision of this part, a fiduciary with respect to a

plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the

same plan:

> (1) if he participates knowingly in . . . an act or omission of such other fiduciary,
> knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 404(a)(1) in the administration of his
> specific responsibilities which gave rise to his status as a fiduciary, he has enabled
> such other fiduciary to commit a breach; or

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes
> reasonable efforts under the circumstances to remedy the breach.

176.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a), requires a fiduciary to "discharge his

duties with respect to a plan solely in the interest of the participants and beneficiaries" and (A)

"for the exclusive purpose of . . . of providing benefits to participants and their beneficiaries" and

(B) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent man acting in a like capacity and familiar with such matters would use in the conduct of

an enterprise of a like character and with like aims."

177.    The Plan Administrators of the Plans were fiduciaries within the meaning of

ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) either because they were the Sponsor of the Plan

and no instrument under which the Plan is operated designates an Administrator of the Plan or

because the Plan provide that they were the administrators of the Plan.  Additionally, providing

information about plan benefits, including information about circumstances that may result in the

denial or reduction of plan benefits, is a fiduciary function under ERISA.  Among the duties

imposed by ERISA § 404 is the duty to provide plan participants and beneficiaries with accurate

information about the benefits provided by the plan, including any offsets that may be charged

against those benefits.

178.    The terms of the Sun Life LTD Policy obligate Defendant Sun Life to provide the

Certificate to the Plan Sponsor of each insured plan "for delivery to each Employee" under the

Policy and to include information about participants' benefits, including a summary of "the

insurance benefits an Employee is entitled to" and "any limitations, exclusions or requirements

that may apply."

179.    Upon information and belief, Defendant Sun Life drafted the Certificate or

Certificate of Coverage and provided it to Sponsors/Plan Administrators of LTD Plans funded or

insured pursuant to a Sun Life LTD Policy, with the knowledge, expectation, and understanding

that the Sponsors, in turn, would and did provide the Certificate to participants in the LTD Plans

for which Sun Life provided insurance coverage.  Because Defendant Sun Life assumed

responsibility for providing participants with information about their eligibility for benefits under

the terms of the Sun Life LTD Policy and Plans funded or insured by the Policy, and drafted the

Certificate with the knowledge, expectation, and intention that it be provided to participants, and

because it made benefit determinations under the Plans, Defendant Sun Life is a fiduciary with

regard to the information in the Certificate about eligibility for benefits and offsets to those

benefits and the decisions regarding the payment of benefits under the Plans.

***Plan Administrators of the LTD Plans Status as Fiduciaries***

180.    Employers such as the Athens Group are the Sponsors, within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), of their respective LTD Plans such as Athens Group LTD Plan, because the employers established the LTD Plans.  Employers such as the Athens Group are also the Plan Administrators, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), of their respective LTD Plans such as the Athens Group LTD Plan because it is the Sponsor of the Plan and no instrument under which the Plan is operated – i.e. the Sun Life Policy -- designates an Administrator of the Plan.

181.    The Sun Life LTD Policy states that the Certificate provided by Sun Life to the Plan Sponsor is "for delivery to each Employee."

182.    Employers such as the Athens Group, acting as the Plan Administrator for the Athens Group LTD Plan, delivers the Certificate, which Sun Life drafted and provided to Athens Group, to participants and beneficiaries in the Athens Group LTD Plan.  Upon information and belief, acting as the Plan Administrators for the other LTD Plans funded or insured pursuant to a Sun Life LTD Policy, the Plan Administrators of these LTD Plans also delivered a Certificate or Certificate of Coverage as it was drafted and provided by Sun Life to the participants and beneficiaries in their respective LTD Plans.

***The Plan Administrators' Fiduciary Breaches***

183.    To the extent that Veterans Disability Benefits is a form of income eligible for offset under the terms of the Sun Life LTD Policy, the Certificate's explanation of the income that may be offset against LTD Benefits awarded under the Sun Life LTD Policy omits a material fact by failing to identify Veterans Disability Benefits as a form of income eligible for offset, and by failing to identify a category of income that can be understood to include Veterans Disability Benefits.

55

184.     In response to Plaintiff's June 11, 2015 document request to the Plan

Administrator of the Athens Group LTD Plan under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4),

Ms. Leigh of Athens Group Holdings, LLC, provided Plaintiff by letter dated June 18, 2015 a

copy of the Certificate, which she designated as the "summary plan description" of the Athens

Group LTD Plan.  Upon information and belief, the Plan Administrators of other LTD Plans

insured by Sun Life used the Certificate as at least part of the "summary plan description."

185.     In response to Plaintiff's June 11, 2015 letter requesting pursuant to the DOL

Regulations interpreting ERISA § 102, 29 C.F.R. § 2520.102-2, "any communications to

[him]self or other Plan participants, that explain 'in a manner calculated to be understood by the

average plan participant' whether and how Veteran's Disability Compensation is considered

'Other Income Benefits' under the Plan," the Athens Group produced no documents. In addition,

the Athens Group's June 18, 2015 letter confirmed that "Athens Group has never relayed any

communications to you, or anyone else covered by the Sun Life Long Term Disability policy,

regarding whether and how Veteran's Disability Compensation would be considered 'Other

Income Benefits' under the Plan."

186.     To the extent that Veterans Disability Benefits is a form of income eligible for

offset under the terms of the Sun Life LTD Policy, the "summary plan description" (aka the

Certificate) fails to comply with ERISA § 102, 29 U.S.C. § 1022, because it does not contain

language that could be reasonably calculated to be understood by the average plan participant to

identify Veterans Disability Benefits to be income eligible to be offset under the terms of the

Policy.  Upon information and belief, the Plan Administrators of the LTD Plans funded or

insured pursuant to a Sun Life LTD Policy, including Athens Group, provide no communications

to participants, in words understandable to the average participants, regarding whether or how Veterans Disability Benefits may be offset against LTD Benefits.

187.    To the extent that Veterans Disability Benefits can be offset under the terms of the Sun Life Policy, the Plan Administrators of the LTD Plans, including Athens Group, breached their obligations under ERISA § 102, 29 U.S.C. § 1022 and their fiduciary duties of loyalty and prudence under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) & (B), by failing to provide a description of the types of income eligible for offset to the participants and beneficiaries in LTD Plans insured by the Sun Life LTD Policy.

*Co-Fiduciary Liability of Defendant Sun Life*

188.    On information and belief, as to each LTD Plan funded or insured pursuant to a Sun Life LTD Policy, the Certificate is distributed in the same manner as in the Athens Group LTD Plan.  Defendant Sun Life provides the Certificate, copies of which are distributed to participants through the Plan Administrator.

189.    By providing the description of income eligible for offset in the Certificate to the Plan Administrators of the LTD Plans with the expectation and knowledge that this would serve as the or part of the "summary plan description," and would constitute the only information about the income subject to offset, Defendant Sun Life knowingly participated in the Plan Administrators' breaches of their fiduciary duties to provide plan participants with a Summary Plan Description that complies with ERISA § 102, and the Plan Administrators' provision of misleading information to participants about their benefits.

190.    A Summary Plan Description must explain all circumstances that may result in disqualification, ineligibility, or denial or loss of benefits in a manner calculated to be understood by the average participant.  Page 2 of the Certificate calls the Certificate a "booklet," and explains that "[t]he booklet is intended to provide a summarized explanation of the current

Group Policy Benefits."   By characterizing the "booklet" as "a summarized explanation" of the LTD Benefits under the LTD Plan, Defendant Sun Life knew or should have known that participants would be misled if the document did not contain an accurate and understandable explanation of the conditions that may result in the denial or loss of benefits.  Defendant Sun Life knew or should have known that the Certificate did not comply with ERISA § 102 and/or was misleading in violation of ERISA § 404(a) because the Sun Life LTD Policy also does not contain any clear notification that Veterans Disability Benefits may be offset.

191.    Because Veterans' Disability Benefits are not mentioned in the Certificate or the Policy, and they cannot be understood to be included in any of the categories of income that are listed, it was foreseeable to Defendant Sun Life that the Certificate would mislead Plaintiff and the Class into believing that Veterans Disability Benefits are not eligible for offset.

192.    Information about the types of income that may be offset against LTD Benefits is material because reasonable participants would consider it important to budget their finances and plan for their financial future, whether they have already begun receiving Veterans Disability Benefits, or may begin to receive such benefits as a result of service-connected disabilities that have not yet manifested at the time they begin receiving LTD Benefits.

193.    The lack of notice to participants that Veterans Disability Benefits may be offset against LTD Benefits foreseeably causes reasonable participants to believe that they will receive more in benefits than they would otherwise.  The lack of adequate disclosures harms Plaintiff and the Class by failing to provide them with sufficient information that reasonable participants would use to anticipate the amount of benefits that will be received and plan their finances accordingly either in the event they become disabled or after they become disabled as a result of a service-connected injury or disability.

194.     By failing to disclose in the Certificate that Veterans Disability Benefits are a form of income eligible for offset when Defendant Sun Life drafted the Certificate and provided it to the Plan Administrators in breach of Defendant's duties under ERISA § 404(a)(1) and by delivering the Certificate to the Plan Administrators with the expectation that the Certificate would be delivered to participants, Defendant Sun Life enabled the Plan Administrators to commit breaches of their own fiduciary duties.

195.     By providing the Certificate to the Plan Administrators of the LTD Plans, including the Athens Group, with the knowledge and intention that the Sponsors and Plan Administrators would provide the Certificate to plan participants, Defendant Sun Life at all times had knowledge that the Sponsors and Administrators provided the Certificate to plan participants as an accurate and authoritative description of their benefits.  At no time has Defendant Sun Life taken reasonable steps to remedy these breaches.

196.     To the extent that Veterans Disability Benefits can be offset under the terms of the Sun Life Policy, by knowingly participating in the fiduciary breaches of the Plan Administrators of the LTD Plan funded or insured pursuant to a Sun Life LTD Policy, by enabling the Plan Administrators to commit the breaches, and/or by failing to take reasonable steps to remedy them, Defendant Sun Life is liable pursuant to ERISA § 405(a) as a co-fiduciary for the Plan Administrators' breaches.

## COUNT V
## VIOLATION OF THE VETERANS ACT 38 U.S.C. § 5301(A)

197.     Plaintiff repeats and re-alleges the allegations contained in the forgoing paragraphs as if fully set forth herein.

198.     38 U.S.C. § 5301(a) provides:

Payments of benefits due or to become due under any law administered by the Secretary [of the Department of Veterans' Affairs] shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

199.   Veterans Disability Benefits awarded under 38 U.S.C. § 1110 is a "benefit[] due . . . under [a] law administered by the Secretary" of the Department of Veterans' Affairs within the meaning of 38 U.S.C. § 5301(a).

200.   Upon learning that Plaintiff and members of the Class have received their Veterans Disability Benefits, Defendant Sun Life sends a letter, such as the one sent to Plaintiff, demanding payment of the amount that Plaintiff, and upon information and belief, other members of the Class received in Veterans Disability Benefits.  In the event that the participant fails to pay their Veterans Disability Benefits to Sun Life, Defendant Sun Life will suspend the participants LTD Benefits, as was done with Plaintiff, or upon information and belief engage in efforts to collect the monies received as Veterans Disability Benefits.

201.   Upon information and belief, Defendant Sun Life considers the amount paid in Veterans Disability Benefits to the participant to be an amount owed by the participant to Sun Life.  As such, Sun Life treats the "overpayment" as a debt to be repaid and Defendant Sun Life is therefore a creditor within the meaning of 38 U.S.C. § 5301.

202.   By seeking to recover the amount of the Veterans Disability Benefits of Plaintiff and the Class, Defendant Sun Life seeks to assert a claim as a creditor and either threatens to make or has made an "attachment, levy or seizure by or under any legal or equitable process whatever," or the equivalent, of Plaintiff's Veterans' Disability Benefits, in violation of 38 U.S.C. § 5301(a).

203.     28 U.S.C. § 2201 provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree . . . ." 28 U.S.C. § 2202 permits "[f]urther necessary or proper relief" to be awarded "based on a declaratory judgment or decree . . . against any adverse party whose rights have been determined by such judgment." Accordingly, Plaintiff and the Class are entitled to an Order declaring that Defendant Sun Life's attempt to recover or recover the amount of the Veterans Disability Benefits of Plaintiff and the Class violates 38 U.S.C. § 5301(a) and an Order, pursuant to 28 U.S.C. § 2202, requiring Defendant Sun Life to restore to members of the Class all the Veterans Disability Benefits seized or recovered by Defendant Sun Life.

### COUNT VI
### CLAIM FOR DECLARATORY & INJUNCTIVE RELIEF PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1102(A)(3) AND 28 U.S.C §§ 2201-02

204.     Plaintiff repeats and re-alleges the allegations contained in the forgoing paragraphs as if fully set forth herein.

205.     28 U.S.C. § 2201 provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree . . . ."

206.     ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a participant, beneficiary or fiduciary of the plan to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i)

to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

207.    ERISA § 502(a)(3) authorizes equitable, not legal, relief, and only sought by participants, beneficiaries or fiduciaries.  To the extent that Defendant Sun Life Sun Life is not a fiduciary of the LTD Plan for which Defendant Sun Life issues group disability insurance or does not have authority to assert claims on behalf of the Plan, Defendant Sun Life is not entitled to recover under ERISA or seek recovery of any alleged overpayment by Plaintiff or the Class. To the extent that Defendant Sun Life is a fiduciary with such authority, the relief must redress or enforce ERISA or the terms of the Plan.

208.    An equitable lien by agreement under ERISA, requires the following: (1) a promise by the beneficiary to repay benefits paid under the plan in the event of recovery from a third party must have been made; (2) the reimbursement agreement must specifically identify a particular fund distinct from the beneficiary's general assets; and (3) the funds specifically identified must be within the possession and control of the beneficiary.  The reimbursement agreement signed by Plaintiff that the March 25, 2015 Claim Denial Letter references does not identify a distinct fund in the possession of Plaintiff or any other member of the Class sufficient to constitute an equitable lien by agreement.

209.    Nothing in ERISA prohibits a participant to receive both Veterans Disability Benefits and disability benefits under an ERISA-covered disability policy.  As such, Defendant Sun Life can only utilize ERISA § 502(a)(3) to recover payments based on enforcement of the terms of the Plan.

210.    Section IV of the Policy states that "[i]f after Sun Life makes an adjustment to the Net Monthly Benefit the Employee has been overpaid, the Employee must reimburse Sun Life

the amount of the overpayment within 31 days of the award." Neither this statement nor any other provision of the Policy identifies a distinct fund in the possession of Plaintiff (or any other member of the Class) sufficient to constitute an equitable lien by agreement.

211.    In the absence of any equitable lien by agreement, the only remaining equitable remedy for a fiduciary of a plan to collect an overpayment on behalf of a plan is equitable restitution, which is subject to "strict tracing rules." Under such "strict tracing rules," to the extent that the overpayment has been dissipated, the overpayment is not traceable and therefore not recoverable in equity.

212.    Plaintiff has spent his monthly LTD Benefit payments each month as he received them from Defendant Sun Life. Upon information and belief, Defendant Sun Life has attempted to collect or collected alleged overpayments from other members of the Class who were no longer in possession of the alleged overpayments.

213.    As such, Plaintiff and the Class are entitled to a declaration that the Sun Life Policy does not contain language sufficient to constitute an equitable lien by agreement and/or that Defendant Sun Life is not entitled to seek to recoup any alleged overpayments without a showing that the overpayment does in fact remain in participants' or beneficiaries' possession or is otherwise traceable and an order requiring Sun Life to disgorge any monies that were collected from participants from assets that were not traceable to their alleged overpayments.

### COUNT VII
### CLAIM FOR KNOWING PARTICIPATION IN A FIDUCIARY BREACH
### BY A NON-FIDUCIARY PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)

214.    Plaintiff repeats and re-alleges the allegations contained in the forgoing paragraphs as if fully set forth herein.

215.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

216.     By providing the description of income eligible for offset in the Certificate to the Plan Administrator of every LTD Plan funded or insured pursuant to a Sun Life LTD Policy, including Athens Group, Defendant Sun Life knowingly participated in and enabled the Plan Administrators' breach of their fiduciary duty to provide participants with a Summary Plan Description that complies with ERISA § 102 and to avoid providing misleading information to participants about their benefits.

217.     To the extent that Defendant Sun Life is not found to be a fiduciary, Defendant knowingly participated in the Plan Administrators' failure to provide a Certificate that discloses that Veterans Disability Benefits may be offset against LTD Benefits, Defendant Sun Life may be ordered to disgorge wrongfully withheld or recovered LTD Benefits in its possession as well as the proceeds and/or profits made on those funds, and/or the fees and/or premiums it received for its services in drafting and providing the Certificate, pursuant to ERISA § 502(a)(3).  .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court award the following relief:

A.     Declaring that Defendant's policy of reducing LTD Benefits payable under the terms of the Sun Life LTD Policy in the amount of Veterans Disability Benefits on the basis of

membership or performance of service in a uniformed service violates USERRA § 4311, 38

U.S.C. § 4311;

B.      Enjoining Defendant from enforcing the policy of reducing LTD Benefits in the

amount of Veterans Disability Benefits with respect to any participants in the future;

C.      Requiring Defendant to compensate Participant Class Members for any losses of

LTD Benefits suffered by reason of Defendant's violation of USERRA § 4323(d)(1)(B), 38

U.S.C. § 4323(d)(1)(B);

D.      Requiring Defendant to pay Plaintiff and Participant Class Members liquidated

damages in an amount as to be determined at trial, pursuant to USERRA § 4323(d)(1)(C), 38

U.S.C. § 4323(d)(1)(C);

E.      Declaring that Plaintiff and the Class are entitled to receive long-term disability

benefits under the terms of the Sun Life LTD Policy without offsetting their Veterans Disability

Benefits;

F.      Ordering that the terms of the Sun Life LTD Policy or the terms of the Plans for

which the Sun Life LTD Policy serves as funding (*i.e.*, insurance) be reformed as necessary to

provide that long-term disability benefits under the terms of the Plans and the Sun Life LTD

Policy be provided to members of the Class without an offset for Veterans Disability Benefits,

and imposing a surcharge upon any breaching fiduciary;

G.      Requiring Defendant to compute and pay benefits to or on behalf of Plaintiff and

the Class without offsetting their Veterans Disability Benefits;

H.      Requiring Defendant to pay prejudgment interest or disgorge any profits that

Defendant has earned on benefits wrongfully withheld and/or untimely distributed to Class

Members or any assets of the Plan;

I.      Requiring Defendant to pay prejudgment interest pursuant to USERRA § 4323(d)(3), 38 U.S.C. § 4323(d)(3);

J.      Enjoining Defendant from recovering and from attempting to recover from Plaintiff and the Class LTD Benefits that Defendant claims should have been offset by Veterans Disability Benefits;

K.      Declaring that Defendant's LTD Policy does not contain language sufficient to constitute an equitable lien by agreement;

L.      Declaring that Defendant may not seek to recover and/or withhold any alleged overpayments of LTD Benefits received by Plaintiff and the Class in the amount of their Veterans' Disability Benefits, or, alternatively, declaring that Defendant may not seek to recover any alleged overpayments of these benefits without establishing that there are traceable funds that remain in their respective possession;

M.      Requiring Defendant to restore to Plaintiff and the Class all LTD Benefits withheld or recovered as alleged overpayments due to Plaintiff and the Class' receipt of Veterans Disability Benefits;

N.      Declaring that Defendant is required to make minimum payments as required under the Policy;

O.      Requiring Defendant to pay attorney's fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and USERRA § 4323(h)(2), 38 U.S.C. § 4323(h)(2), and/or ordering the payment of reasonable fees and expenses of this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine (and/or other applicable law) out of any money or benefit recovered for the Class in this Action;

P.      Awarding, declaring or otherwise providing Plaintiff and the Class all relief under

ERISA § 502(a), 29 U.S.C. § 1132(a), USERRA § 4323(d) and (e), 38 U.S.C. § 4323(d) and (e),

or any other applicable law, that the Court deems proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 or any similar rule or law, Plaintiff

demands a trial by jury for all causes of action and issues for which trial by jury is available.

Dated:  October 25, 2016                    Respectfully submitted,

Jason M. Leviton
Jacob A. Walker
BLOCK & LEVITON LLP
155 Federal Street, Suite 1303
Boston, Massachusetts 02110
Tel:  (617) 398-5600
Fax:  (617) 507-6020
Email: Jason@blockesq.com
         Jake@blockesq.com

R. Joseph Barton, *pro hac vice to be filed*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: jbarton@cohenmilstein.com

Matt Crotty, *pro hac vice to be filed*
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave. Ste 409
Spokane, WA 99201
(509) 850 7011
Email: matt@crottyandson.com

***Attorneys for Plaintiff***

67